

# ARKANSAS COURT OF APPEALS

DIVISION III
No. CR–14–120

| | |
|---|---|
| M.D.<br><br>APPELLANT<br><br>V.<br><br>STATE OF ARKANSAS<br>APPELLEE | Opinion Delivered October 8, 2014<br><br>APPEAL FROM THE CRAIGHEAD COUNTY CIRCUIT COURT<br>[NO. JV-10-356]<br><br>HONORABLE LEE FERGUS, JUDGE<br><br>AFFIRMED |

## WAYMOND M. BROWN, Judge

Appellant M.D. appeals from the trial court's order committing him to the Division of Youth Services (DYS) for an undetermined period of time for robbery[1] and violation of aftercare. Appellant's sole argument on appeal is that the trial court erred by denying his directed-verdict motion when the testimony given by the witnesses conflicted.[2] We find no error and affirm.

At the hearing, the victim, Billy Reed, who is deaf and mute, testified through an interpreter to the events that took place on November 11, 2013. Reed stated that he was walking home from Jordan's Store when he was approached by appellant and two other juveniles. According to Reed, the first juvenile, L.D., grabbed his arm and tripped him,

---

[1]This charge had an enhancement of engaging in violent group activities.

[2]Because this was a hearing before a judge, appellant's motion for directed verdict was actually a motion to dismiss. *See Robinson v. State*, 2014 Ark. App. 64.

SLIP OPINION

making Reed fall to the ground. He stated that appellant grabbed his arm and broke his finger. He testified that the two juveniles began to frisk him, and eventually took money from him. He said that the third juvenile, L.L., whom he considered a friend, touched him but then "took off and went home." He stated that appellant had on a white shirt and tan pants, that L.L. was wearing "a black-hooded hoodie thing like a jacket," and that L.D. had on a purple shirt. Reed said that his sister called the police for him and that he was able to give the police L.L.'s address. He testified that he is known around the neighborhood as "Can't get right" because he gets confused and cannot get things right. However, he stated that he was more angry the night of the robbery than confused. He said that he positively identified appellant and the others as the ones who attacked him.

M.B. testified that she witnessed Reed "get jumped" by three people. However, she said that she could not see their faces. She said that she told her mother what she saw. Her mother, Amisha Baker, corroborated her story. She said that she saw Reed coming toward her and "three guys running ahead of him." She stated that she "figured they were kids because one of them had [on] a pair of shorts." However, she stated that she could not tell their race or exactly what they had on, because they were "quite a bit ahead of [her]."

Officer Christopher Jefferson of the Jonesboro Police Department testified that he worked the robbery incident involving Reed. He stated that Reed was able to give him a description of the suspects, as well as L.L.'s address. He said that he did not take a witness statement at that time because he wanted to try to find the suspects. According to Officer Jefferson, he went to the address given by Reed and was able to locate three individuals. He

2

SLIP OPINION

stated that L.L.'s mother agreed to bring the juveniles to where Reed was. Officer Jefferson testified that he shone his light into the vehicle and that Reed got emotional. He stated that the juveniles' clothing was similar to the descriptions given by Reed.

Shantae Love, M.D.'s mother, testified that in the past, her "son has always admitted when he has done something wrong."

M.D. denied being a part of the group that had harmed and robbed Reed. He stated that he had just walked to L.L.'s house only minutes before the police arrived. He said that when he got to the house, L.L. was helping his mother take groceries into the house. He testified to only vaguely knowing Reed; he stated that he had not met the third juvenile, L.D., before he arrived at L.L.'s house. He said that he did not come across three guys running as he walked to L.L.'s house. He also stated that he did not see Reed. M.D. testified that he did not plead guilty in this case, as he has done in the past, because he did not have anything to do with what had happened to Reed.

Sharonda Williams, L.L.'s mother, testified that when she left her house around 4:30 p.m. on November 11, L.L. was at home. She stated that she told him not to leave the house. She said that when she arrived home from grocery shopping, M.D. and L.D. were in the yard. She testified that she called L.L. out of the house to help her with the groceries. She stated that she had been home approximately thirty minutes when the police arrived. She said that the juveniles could not have left her house in that time because they were in her sight the whole time. She testified that she volunteered to take them to where Reed was. She stated that Reed approached the vehicle, pointed, and beat on the window before Officer Jefferson

3

shined his flashlight into it.  On cross-examination, Williams stated that M.D. was just coming into her yard when she pulled up.  She testified that her son was wearing grey sweatpants on the day of the robbery.

Tammy Davis, L.L.'s cousin, testified that she was with Williams on the date in question.  She stated that she and Williams arrived at Williams's house around 6:00 p.m., and that she remembered seeing L.L. and L.D. at the house at that time.  She said that M.D. arrived at the house around 6:30 p.m., approximately five minutes before the police showed up.

Travis Smith, L.L.'s uncle, testified that he lived in the same house as L.L.  He stated that on the date in question, all three juveniles were "talking and hanging out" in the yard with him.  He said that he never saw them leave the house.  He also stated that M.D. was at the house when he arrived home before 5:00 p.m.[3]

L.L. testified that he was familiar with Reed and that Reed usually visited him every other day.  He stated that they communicate through texts.  He said that M.D. did not arrive at his house on November 11 until after they had started unloading groceries.

M.D. made his motion for dismissal at the conclusion of the evidence.  In the motion, he argued that the witnesses' testimony was conflicting about when M.D. arrived at L.L.'s house.  He also argued that dismissal was warranted because the clothing description was

---

[3]The court did not find this testimony credible in that it conflicted with the testimony of Williams and L.L.

conflicting. The trial court denied the motion and subsequently found M.D. guilty of robbery. This appeal followed.

A motion to dismiss at a bench trial, like a motion for directed verdict at a jury trial, is considered a challenge to the sufficiency of the evidence.[4] When the sufficiency of the evidence is challenged in a criminal conviction, we review the evidence in the light most favorable to the State and affirm if the verdict is supported by substantial evidence.[5] Substantial evidence is evidence that induces the mind to go beyond mere suspicion or conjecture, and that is of sufficient force and character to compel a conclusion one way or the other with reasonable certainty.[6]

A person commits robbery if, with the purpose of committing a felony or misdemeanor theft or resisting apprehension immediately after committing a felony or misdemeanor theft, the person employs or threatens to immediately employ physical force upon another person.[7]

M.D. argues that the testimony was contradictory and could not support a conviction. However, it is the duty of the trier of fact to resolve any contradictions, conflicts, and inconsistencies in a witness's testimony and to determine the credibility of the witnesses.[8]

---

[4] *Vance v. State*, 2011 Ark. App. 413.

[5] *Id.*

[6] *Id.*

[7] Ark. Code Ann. § 5-12-102(a) (Repl. 2013).

[8] *Lee v. State*, 2010 Ark. App. 15.

Viewing the evidence in the light most favorable to the State, the evidence reveals that M.D., along with two other juveniles, approached Reed as he was walking home from the store. One juvenile grabbed Reed and tripped him, and M.D. grabbed Reed and subsequently broke Reed's finger. Both juveniles "frisked" Reed and took his cash. The third juvenile touched Reed but eventually ran off. Reed was able to identify all of the suspects. Reed's identification was sufficient to support the conviction. Accordingly, we affirm.

Affirmed.

GLADWIN, C.J., and WOOD, J., agree.

*Terry Goodwin Jones*, for appellant.

*Dustin McDaniel*, Att'y Gen., by: *LeaAnn J. Adams*, Ass't Att'y Gen., for appellee.